

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:10CR 63 |
| | § | *Schneider/Guthrie* |
| NICODEMUS UDOFIA (1) | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### Medicare Program

1.    The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five and some persons under the age of sixty-five who are blind or disabled.  Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").  Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

2.    Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it is a public plan affecting commerce under which medical benefits, items, and services are provided to individuals and under which individuals and entities who provide medical benefits, items, or services may obtain payments.

3.     Medicare is a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f), in that it is a plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government.

4.     The Medicare program includes a voluntary supplemental insurance benefit known as Part B, which is funded from insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury. Part B of the Medicare program covers most out-patient services, including durable medical equipment ("DME"). DME is equipment that may be used in the home on a repeated basis for a medical purpose. DME suppliers who meet certain criteria may obtain Medicare provider numbers, which allowed them to submit claims directly to Medicare in order to receive reimbursement for the cost of DME supplied to eligible Medicare beneficiaries.

5.     DME companies are prohibited from receiving payments for items or services:

    a. That are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member or which are not reasonable and necessary for the prevention of illness,

    b. For which the individual furnished such items or services has no legal obligation to pay and which no other person has a legal obligation to provide or pay for,

    c. That constitute personal comfort items, or

> d.  Where such items are for custodial care.

6.     It is the obligation of the health care providers, including DME companies, to assure that services or items:

> a.  Are provided economically and only when, and to the extent, medically necessary, and
>
> b.  Are supported by evidence of medical necessity.

7.     The United States provides reimbursement for Medicare claims through CMS.  CMS contracts with private insurance organizations, referred to as "carriers" under Part B, to receive, adjudicate, and pay Medicare claims submitted by approved and participating health care providers.  These carriers are required to administer the Medicare program according to regulations established by CMS.  There are four regional carriers, known as Durable Medical Equipment Regional Carriers ("DMERCs"), who are responsible for processing claims for DME reimbursement.

8.     Medicare Part B covered services must be submitted by a provider or supplier to the appropriate regional carrier based upon the beneficiary's state of residence.  Since June 2007, Part B has been administered in Texas by CIGNA Government Services, LLC ("CIGNA"), which, pursuant to contract with CMS, serves as a fiscal intermediary to receive, adjudicate, and pay Medicare Part B claims submitted to it by suppliers of DME.  Prior to CIGNA, Part B was administered in Texas by Palmetto Government Benefits Administrators (Palmetto GBA), a subsidiary of Blue Cross Blue Shield of South Carolina.  Medicare Part B reimburses suppliers directly for the cost of equipment provided to eligible Medicare beneficiaries provided that such equipment was

ordered by a licensed physician who certified that the equipment was medically necessary for the beneficiary.  Such physician certifications could be in the form of a prescription or a certificate of medical necessity ("CMN").  A CMN is a form created by Medicare which is valid only if it is signed by a physician and certifies to the medical necessity of the DME prescribed.  Medicare regulations require DME suppliers to maintain these prescriptions and certificates of medical necessity on file at their companies.

9.     In order to become a supplier authorized to bill Medicare for DME, a company is required to submit a Medicare Enrollment Application to CMS via the National Supplier Clearinghouse ("NSC").  The NSC contracts with Medicare to receive, evaluate, and approve or deny Medicare Enrollment Applications.  In this application, potential suppliers promise to comply with all Medicare-related laws and regulations. Only after the NSC approves an application and provides a company with a Medicare supplier number may a company bill Medicare for benefits, items, and services provided to Medicare beneficiaries.

10.    In order to receive payment from Medicare, the supplier is required to submit a health insurance claim form ("Form HCFA 1500") to Medicare.  The claim form is required to state, among other things, the beneficiary's name and health insurance claim number ("HICN"), the Healthcare Common Procedural Code Systems ("HCPCS") code corresponding to the DME provided to the Medicare beneficiary, the date the DME was provided, the charge for the DME, and the name and Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI") number of the referring physician or other health care provider who ordered or prescribed the services.  All

information contained in the form must be true, accurate, and complete. The claim form can be submitted on paper or in electronic format.

11.     Medicare has specific guidelines for the billing and coverage of durable medical equipment and supplies. These guidelines are published by Palmetto GBA and CIGNA in the *Medicare Region C DMEPOS Supplier Manual*. This manual was provided to all new DME suppliers and was updated four times a year. The manual is made available to Medicare suppliers in both computer CD-ROM and paper format. It is also publically-available and accessible on the Internet.

12.     DME suppliers sign an agreement with Medicare in which they state that they were familiar with Medicare's billing requirements and in which they promise not to submit false or fraudulent claims. Medicare requires DME suppliers to retain records for a period of six years and three months.

13.     A supplier may contract with a billing company to prepare and transmit claims to Medicare on its behalf. All payments made by Medicare are made to a provider in the form of a United States Treasury check or a pre-arranged direct deposit into the provider's bank account.

**Power Wheelchairs**

14.     Under Medicare rules, Medicare Part B pays for the cost of a power wheelchair and accessories supplied to a beneficiary when the beneficiary has a serious, long-term medical or physical condition; a power wheelchair is medically necessary for the beneficiary; the beneficiary cannot operate a manual (non-motorized) wheelchair; and the beneficiary is capable of safely operating the controls for a power wheelchair. To be

eligible to receive a power wheelchair, Medicare rules require that a beneficiary exhibit severe weakness in the upper extremities and be unable to walk over long periods of time.

15. In order for a DME supplier to be paid for providing a power wheelchair and accessories to a beneficiary, Medicare requires the supplier to obtain documentation that the wheelchair was medically necessary. A CMN is required to establish medical necessity. On the CMN, the Medicare beneficiary's treating physician is required to certify that the beneficiary has severe weakness of the upper extremities due to a neurologic, muscular, or cardiopulmonary disease or condition, and that the beneficiary is unable to operate any type of manual wheelchair. The physician is also required to sign the CMN after attesting that he or she is the beneficiary's treating physician and the information regarding medical necessity is true, accurate, and complete.

16. The CMN includes a section that describes the power wheelchair and accessories that were ordered by the beneficiary's treating physician and contains the DME supplier's charge for these items. This section of the CMN forms the basis of the bill that the DME supplier send to Medicare in order to be paid for the cost of providing the power wheelchair and accessories.

17. A DME supplier who bills Medicare for the cost of a power wheelchair and accessories is required to submit the completed and signed CMN. If the claim is submitted electronically, then all of the information from the CMN is required to be submitted electronically. The supplier's date of service ("DOS") is the date of delivery to the beneficiary's home.

**Medicaid Program**

18.    The Texas Medical Assistance Program ("Medicaid") is a health care benefit program jointly funded by the State of Texas and the federal government. The Medicaid program helps pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs. Individuals eligible under the Medicaid program are referred to as Medicaid "recipients."

19.    Medicaid is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it is a public plan affecting commerce under which medical benefits, items, and services are provided to individuals and under which individuals and entities who provide medical benefits, items, or services may obtain payments.

20.    Medicaid is a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f), in that it is a State health care program, as defined by Title 42, United States Code, Section 1320a-7(h).

21.    The Texas Health and Human Services Commission ("HHSC") is responsible for administering the Medicaid program in the State of Texas. HHSC contracts with the Texas Medicaid and Healthcare Partnership ("TMHP") to receive applications from prospective Medicaid providers, assign Medicaid provider numbers, educate providers as to Medicaid policies and regulations, and process and pay Medicaid claims.

22.     Provider enrollment in the Medicaid program is voluntary.  In order to obtain approval, the provider must submit an application to TMHP.  If the provider meets certain qualifications, TMHP will approve the application, enter into a written contract with the provider, and issue a unique provider identification number to the provider. Upon assignment of a provider number, a current Texas Medicaid Provider Procedures Manual is distributed or made available online to the provider.  Additionally, TMHP periodically mails Texas Medicaid Bulletins to the provider, which include updates to the procedures manual.  The procedures manual, bulletins, and updates contain the rules and regulations pertaining to services covered by Medicaid as well as instructions regarding the proper submission of claims to Medicaid for services provided to Medicaid recipients. Each provider agrees to abide by the policies and procedures of the Medicaid program.

23.     In order to receive payment from Medicaid, the supplier is required to submit a health insurance claim form ("Form HCFA 1500") to Medicaid.  The claim form is required to state, among other things, the beneficiary's name and patient control number ("PCN"), the Healthcare Common Procedural Code Systems ("HCPCS") code corresponding to the DME provided to the Medicaid beneficiary, the date the DME was provided, the charge for the DME, and the name and Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI") number of the referring physician or other health care provider who ordered or prescribed the services.  All information contained in the form must be true, accurate, and complete.  The claim form could be submitted on paper or in electronic format.

24.     The Medicaid program may pay a portion of a claim originally submitted to Medicare in the event that the beneficiary/recipient has both Medicare and Medicaid coverage.  This portion is generally 20 percent of the Medicare allowance for the billed charge.  An individual who is eligible under both the Medicare and Medicaid programs is referred to as a "dual-eligible beneficiary."  A claim originally submitted to Medicare and subsequently to Medicaid for payment is referred to as a "crossover claim."  Such claims are sent to Medicaid once processed by Medicare.    Medicaid will pay its portion if Medicare originally allowed the claim.    The guidelines regarding submission and payment of these claims are contained in the procedures manual given providers upon enrollment in the Medicaid Program.

25.     Medicaid reimburses suppliers directly for the cost of equipment provided to eligible Medicaid recipients provided that such equipment was ordered by a licensed physician who certified that the equipment was medically necessary for the beneficiary. Such physician certifications should be in the form of a Home Health Services ("Title XIX") Durable Medical Equipment (DME)/Medical Supplies Physician Order Form.  A Title XIX is a form created by Medicaid which is valid only if it is signed by a physician and certifies to the medical necessity of the DME prescribed.    Medicaid requires authorization in the form of a Title XIX for certain types of equipment.    Medicaid regulations require DME suppliers to maintain Title XIXs on file at their companies.

26.     Medicaid regulations require that a provider document every service rendered to a patient for whom a bill was submitted.  This documentation is part of the

recipient's medical record and is required to be retained by the provider for a period of not less than five years.

27.     All payments made by Medicaid are made to a provider in the form of a check or a pre-arranged direct deposit into the provider's bank account.

### The Defendant and His Company

28.     Ebony Medical Equipment & Supplies, Inc., ("Ebony") did business at 421 Troup Highway, Tyler, Texas.  Ebony began operating on or about May 11, 2001.  Ebony is purportedly in the business of supplying DME to Medicare and Medicaid beneficiaries.

29.     Defendant **Nicodemus Udofia** owns, manages, and operates Ebony.

### COUNTS 1-3

Violation:  18 U.S.C. § 1347
(Health Care Fraud)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 2006, and continuing through in or around August 2008, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendant,

### Nicodemus Udofia,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and wilfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by

means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the control of Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

3.     It was the general purpose of the scheme and artifice for the defendant to unlawfully obtain money from Medicare and Medicaid through misrepresentations and violations of Medicare and Medicaid rules.  To this end, the defendant would, among other things, (a) submit and cause the submission of false and fraudulent claims to Medicare and Medicaid; and (b) conceal the submission of false and fraudulent claims to Medicare and Medicaid.

### The Scheme and Artifice

It was part of the scheme and artifice that:

4.     The defendant devised and carried out a scheme and artifice to defraud Medicare and Medicaid through the submission of claims for medical equipment and supplies which were not prescribed or otherwise authorized by a physician and for which he was not entitled to reimbursement.

5.     **Nicodemus Udofia** knowingly submitted and caused Ebony to submit claims in order to obtain Medicare and Medicaid payments, falsely representing that certain physicians had prescribed or ordered DME when the physicians had not prescribed or ordered the DME and had not authorized **Nicodemus Udofia** to use their names, UPINs, or NPIs in conjunctions with such claims.

6.   **Nicodemus Udofia** prepared documents and caused documents to be prepared that falsely represented that physicians had prescribed or ordered DME for certain Medicare beneficiaries when the physicians had not prescribed or ordered the DME.

7.   **Nicodemus Udofia** forged the signatures of physicians on physicians' orders, Certificates of Medical Necessity, and other documents without their permission.

8.   **Nicodemus Udofia** submitted and caused to be submitted numerous false and fraudulent claims for equipment provided to Medicare and Medicaid beneficiaries, falsely representing in the submitted claims that the patients' physicians had prescribed the items provided to the beneficiaries.

9.   **Nicodemus Udofia** obtained payments from Medicare and Medicaid based on the submission of false and fraudulent claims.

### Acts in Execution of the Scheme and Artifice

10.   On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and wilfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program, that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of said health care benefit program, in that he submitted or caused the submission of claims to Medicare and Medicaid for approximately the identified dollar amounts, and represented that, on or about the

identified dates of service, Ebony provided the identified DME to the identified beneficiaries pursuant to physicians' orders or prescriptions:

| Count | Medicare Beneficiary | Purported Service Date | Claim Submission Date | HCPCS Code – DME | | Total Billed Amount |
|-------|----------------------|------------------------|-----------------------|-------------------|---|---------------------|
| 1 | K.M. | 01/04/06 | 05/18/06 | K0011 | Standard-weight frame motorized/power wheelchair | $6,191.25 |
| 2 | I.H. | 05/02/07 | 06/26/07 | K0823 | Power wheelchair, group 2 standard | $4,023.70 |
| 3 | R.S. | 06/26/08 | 07/10/08 | K0823 | Power wheelchair, group 2 standard | $4,687.20 |
| | | | | E0973 | Wheelchair accessory, adjustable height, detachable armrest | |
| | | | | E0951 | Heel loop/holder | |
| | | | | E0990 | Wheelchair accessory, elevating leg rest | |
| | | | | E2365 | Power wheelchair accessory, U-1 sealed lead acid battery | |

In violation of 18 U.S.C. § 1347.

## COUNTS 4-6

<u>Violation</u>:  18 U.S.C. § 1343
(Wire Fraud)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

### The Scheme and Artifice to Defraud

2.     From in or around January 2006, and continuing through in or around August 2008, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendant,

### Nicodemus Udofia

devised and intended to devise a scheme and artifice to defraud Medicare and Medicaid, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### The Manner and Means of the Scheme and Artifice

It was part of the scheme and artifice that:

3.     From in or around January 2006, and continuing through in or around August 2008, **Nicodemus Udofia** caused claims for payment to be submitted to Medicare and Medicaid for medical equipment and supplies which were not prescribed or otherwise authorized by a physician.

4.     **Nicodemus Udofia** knowingly submitted and caused Ebony to submit claims in order to obtain Medicare and Medicaid payments, falsely representing that certain physicians had prescribed or ordered DME when the physicians had not

prescribed or ordered the DME and had not authorized **Nicodemus Udofia** to use their names, UPINs, or NPIs in conjunctions with such claims.

5.  **Nicodemus Udofia** supplied beneficiaries with medical equipment and supplies which were not prescribed or otherwise authorized by a physician and billed for medical equipment and supplies for which he was not entitled to reimbursement.

6.  **Nicodemus Udofia** prepared documents and caused documents to be prepared that falsely represented that physicians had prescribed or ordered DME for certain Medicare beneficiaries when the physicians had not prescribed or ordered the DME.

7.  **Nicodemus Udofia** forged the signatures of physicians on physicians' orders, Certificates of Medical Necessity, and other documents without their permission.

8.  **Nicodemus Udofia** submitted and caused to be submitted numerous false and fraudulent claims for equipment provided to Medicare and Medicaid beneficiaries.

9.  **Nicodemus Udofia** falsely represented in the submitted claims that the patients' physicians had prescribed the items provided to the beneficiaries, knowing that the patients' physicians had not prescribed the items provided to the beneficiaries.

10.  The defendant did so knowing such claims were false.

11.  The claims were submitted electronically via the Internet through the use of interstate wire communications facilities.

12.  **Nicodemus Udofia** obtained payments from Medicare and Medicaid based on the submission of false and fraudulent claims.

### Submissions by Wire

13.     On or about the dates set forth below, in the Eastern District of Texas and elsewhere, the defendant, **Nicodemus Udofia**, for the purpose of executing, and attempting to execute, the scheme to defraud, and for obtaining money by means of false and fraudulent representations, did cause to be transmitted in interstate commerce, by means of interstate wire communications facilities, certain signals, that is electronic claims submissions, to Medicare and Medicaid:

### Medicare and Medicaid Submissions

| Count | Claim Submission Date | Medicare Beneficiary | HICN (last 4 digits) | PCN (last 4 digits) |
|-------|----------------------|----------------------|----------------------|---------------------|
| 4 | 05/18/06 | K.M. | 818A | 0693 |
| 5 | 06/26/07 | I.H. | 346A | 1914 |
| 6 | 07/10/08 | R.S. | 603A | 7087 |

All in violation of 18 U.S.C. § 1343.

### COUNT 7

> Violation:  42 U.S.C. § 1320a-7b(b)(2)(A)
> (Illegal Remunerations)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     On or about January 4, 2006, in the Eastern District of Texas, and elsewhere, the defendant,

### Nicodemus Udofia

did knowingly and wilfully offer remuneration, including a kickback, bribe, and rebate,

directly and indirectly, overtly and covertly, in cash and in kind, to Sheba Kelly, to

induce Sheba Kelly to refer an individual to **Nicodemus Udofia** for the furnishing and

the arranging of the furnishing of any item and service for which payment may be made

in whole and in part under a Federal health care program, in violation of 42 U.S.C. §

1320a-7b(b)(2)(A).

## COUNT 8

> Violation:  42 U.S.C. § 1320a-
> 7b(b)(2)(A)
> (Illegal Remunerations)

1.    The General Allegations section of this Indictment is realleged and
incorporated by reference as though fully set forth herein.

2.    On or about April 15, 2009, in the Eastern District of Texas, and elsewhere,
the defendant,

### Nicodemus Udofia

did knowingly and wilfully offer remuneration, including a kickback, bribe, and rebate,

directly and indirectly, overtly and covertly, in cash and in kind, to Ronald Keel to induce

Ronald Keel to refer an individual to **Nicodemus Udofia** for the furnishing and the

arranging of the furnishing of any item and service for which payment may be made in

whole and in part under a Federal health care program, in violation of 42 U.S.C. § 1320a-

7b(b)(2)(A).

## COUNTS 9-11

Violation:  18 U.S.C. § 1028A
(Aggravated Identity Theft)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant,

**Nicodemus Udofia**

did, without lawful authority, knowingly transfer and use, means of identification of other persons, that is, Medicare beneficiaries' names, HICNs, and PCNs, during in and relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud, a violation of 18 U.S.C. § 1343, and health care fraud, a violation of 18 U.S.C. § 1347:

| Count | Medicare Beneficiary | HICN (last 4 digits) | PCN (last 4 digits) | Purported Service Date | Claim Submission Date |
|-------|----------------------|----------------------|---------------------|------------------------|-----------------------|
| 9     | K.M.                 | 818A                 | 0693                | 01/04/06               | 05/18/06              |
| 10    | I.H.                 | 346A                 | 1914                | 05/02/07               | 06/26/07              |
| 11    | R.S.                 | 603A                 | 7087                | 06/26/08               | 07/10/08              |

All in violation of 18 U.S.C. § 1028A.

## COUNTS 12-14

Violation:  18 U.S.C. § 1028A
(Aggravated Identity Theft)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant,

**Nicodemus Udofia**

did, without lawful authority, knowingly transfer, possess, and use, means of identification of other persons, that is, physicians' names, UPINs, and NPIs, during in and relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud, a violation of 18 U.S.C. § 1343, and health care fraud, a violation of 18 U.S.C. § 1347:

| Count | Physician | UPIN (last 3 digits) | NPI (last 4 digits) | Purported Use Date | Billed Amount |
|-------|-----------|----------------------|---------------------|--------------------|---------------|
| 12 | W.M. | 091 | N/A | 05/18/06 | $6,191.25 |
| 13 | R.D. | 259 | N/A | 06/26/07 | $4,023.70 |
| 14 | L.T. | N/A | 4657 | 07/10/08 | $4,687.20 |

All in violation of 18 U.S.C. § 1028A.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7)

1.     The allegations contained in Counts 1 through 14 of this indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2.     Upon conviction of any violation of 18 U.S.C. § 1347, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

3.     Upon conviction of any violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

4.     The property which is subject to forfeiture, includes but is not limited to the following:

    a.  A money judgment in the amount of $71,519.24, which represents the gross proceeds of the fraud.

5.     Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

    a.  Cannot be located upon the exercise of due diligence;

b.  Has been transferred, or sold to, or deposited with a third party;

c.  Has been placed beyond the jurisdiction of the Court;

d.  Has been substantially diminished in value; or

e.  Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of **Nicodemus Udofia.**

6.     By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendant have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7) and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
Date

JOHN M. BALES
UNITED STATES ATTORNEY

NATHANIEL C. KUMMERFELD
SPECIAL ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:10CR__ |
| | § | |
| NICODEMUS UDOFIA (1) | § | |

## NOTICE OF PENALTY

### COUNTS 1-3

VIOLATION:           Title 18, United States Code, Section 1347
Health Care Fraud

PENALTY:           Imprisonment of not more than ten years, and/or a fine of
$250,000 to be followed by not more than three (3) years
supervised release.

SPECIAL ASSESSMENT: $100.00 each count

### COUNTS 4-6

VIOLATION:           Title 18, United States Code, Section 1343
Wire Fraud

PENALTY:           Imprisonment of not more than twenty years, and/or a fine of
$250,000 to be followed by not more than three (3) years
supervised release.

SPECIAL ASSESSMENT: $100.00 each count

### COUNTS 7-8

VIOLATION:           Title 42, United States Code, Section 1320a-7b(b)(2)(A)
Illegal Remunerations

PENALTY:           Imprisonment of not more than five years, and/or a fine of
$25,000 to be followed by not more than three (3) years
supervised release.

SPECIAL ASSESSMENT: $100.00 each count

## COUNTS 9-14

VIOLATION:                Title 18, United States Code, Section 1028A
                          Aggravated Identity Theft

PENALTY:                  Imprisonment for not less than two (2) years and/or a fine of
                          $250,000 to be followed by not more than one (1) year
                          supervised release.  This sentence is to run consecutively to
                          any other sentence imposed.  A person convicted of a
                          violation of this section shall not be placed on probation.

SPECIAL ASSESSMENT: $100.00 each count.